**Albert HWANG, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 09–246C.

United States Court of Federal Claims.

Aug. 19, 2010.

Albert Hwang, appearing pro se, San Ramon, California.

Patryk J. Drescher, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Bryant G. Snee, Deputy Director, United States Department

of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., for Defendant.

### OPINION AND ORDER

WHEELER, Judge.

Before the Court is *pro se* Plaintiff Albert Hwang's amended motion for summary judgment pursuant to Rule 56 of the Court of Federal Claims ("RCFC") and Defendant's motion to dismiss pursuant to RCFC 12(b)(6), or in the alternative, motion for judgment on the administrative record. This military pay suit stems from Mr. Hwang's separation from active duty service on March 24, 2004 as a Unit Supply Specialist with the United States Army ("Army"). On January 26, 2004, Mr. Hwang's commander recommended that he undergo psychiatric treatment after he complained to his superiors and other soldiers that his roommate ground his teeth at night and "showed strange behavior." (July 22, 2009 Am. Compl. 2.) While hospitalized, Mr. Hwang was diagnosed with Axiom I Delusional Disorder. Mr. Hwang's examining psychiatrist recommended his separation from the Army pursuant to Army Regulation 635–200 for a "mental condition not amounting to disability." (Def.'s Mot. to Dismiss, App. 13–14.) Shortly after he was released from the hospital, Mr. Hwang's commander initiated separation proceedings honorably discharging him from active duty service. (July 22, 2009 Am. Compl. ¶¶ 12–19.) Mr. Hwang alleges that the Army wrongfully discharged him and violated its own regulations as well as his First, Fifth, and Fourteenth Amendment rights by failing to refer him to the Medical Evaluation Board ("MEB") prior to his separation. *Id.* at 1. Mr. Hwang also contends that the Army used incorrect data in its mental health evaluation, wrongly diagnosed him with delusional disorder, and failed to provide him with an opportunity to seek a second opinion on his diagnosis. *Id.* Mr. Hwang seeks back pay and reinstatement in the Army, and also requests that documentation related to his medical diagnosis be expunged from his military records. *See* Pl.'s Mot. to Strike; July 22, 2009 Am. Compl. 7.

It is well established that this Court lacks jurisdiction to reinstate a serviceman once his term of enlistment has expired. *See, e.g., Thomas v. United States,* 42 Fed.Cl. 449, 453 (1998). Accordingly, with respect to Mr. Hwang's request for reinstatement, the Court GRANTS Defendant's motion to dismiss for failure to state a claim upon which relief may be granted. Moreover, a review of the administrative record and Army regulations in effect at the time of Mr. Hwang's termination demonstrates that the decision of the Army Board for Correction of Military Records ("ABCMR" or "Board") finding that Mr. Hwang was properly separated from duty was not arbitrary, capricious, or contrary to law. Indeed, the ABCMR offered Mr. Hwang the very relief he claims he was due, namely a medical evaluation to determine whether his delusional disorder diagnosis was fitting. Given his allegations that his original diagnosis was incorrect, the ABCMR's offer to provide him with another evaluation was reasonable and in accordance with the law. Accordingly, the Government's motion for judgment on the administrative record is GRANTED. Having found in favor of Defendant, the Court hereby DENIES Mr. Hwang's motion for summary judgment.

### Background [1]

Mr. Hwang enlisted in the Army on September 12, 2002 as an active duty soldier for a three-year period at the rank of Specialist in the Military Occupational Specialty of 92Y, Unit Supply Specialist. Administrative Record ("AR") 135–36; Pl.'s April 17, 2009 Compl. 2. After completing basic training, Mr. Hwang was assigned to K–16 Army Airfield, Korea, a part of the 164th Air Traffic Service Group. AR 169.

Mr. Hwang's complaint in this Court stems from circumstances surrounding his separation from the Army in 2004. On January 26, 2004, Mr. Hwang complained to his command and others, that for the past ten years, he

---

1. The facts contained in this opinion are taken from the administrative record filed by Defendant and from pleadings and supporting documentation submitted by Mr. Hwang, which, for purposes of this opinion, are presumed to be correct. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

had been harassed by an organization that he referred to as the "Inflictors." AR 121–22. Mr. Hwang asserted that the Inflictors may have contacted those around him, including his roommate, causing his roommate to grind his teeth at night to bother him. *Id.* He also claimed that a radio station in California has intercepted his phone calls and forwarded them to others. *Id.* Based upon these allegations, Mr. Hwang's commander referred him to an inpatient psychiatric care service to undergo an evaluation. *Id.* On January 26, 2004, Mr. Hwang's platoon officer, Sergeant ("SGT") Brian Scheuring, formally counseled him pursuant to Army Department Regulations, informing Mr. Hwang of the reasons for his referral, namely that he potentially posed a safety risk to himself and others. *Id.*

Mr. Hwang subsequently was hospitalized at the 121st General Hospital in South Korea for three days from February 3–6, 2004. AR 123–24. During his hospitalization, the examining psychiatrist, Dr. Cha J. Yu, determined that Mr. Hwang suffered from delusional disorder. AR 123. Dr. Yu's clinical examination concluded that Mr. Hwang suffered from "psychiatric disease, defect, or personality disorder that would cause significant defects in judgment, responsibility or reliability." *Id.* He further opined that Mr. Hwang's retention in the Army would "likely create additional management problems for the commander" and thus recommended administrative discharge pursuant to Army Regulation 635–200. *Id.* Dr. Yu also recommended that Mr. Hwang have no access to weapons or any hazardous materials. *Id.*

On February 6, 2004, Mr. Hwang was released back to his unit and placed on medication. AR 119. SGT Scheuring again formally counseled Mr. Hwang, informing him that he was no longer authorized to continue his military duties due to his condition. *Id.* SGT Scheuring instructed him to take medication every evening as prescribed. *Id.* Mr. Hwang also was ordered to report to his supervisor or platoon officer his whereabouts during duty hours. *Id.* Mr. Hwang signed a counseling form on February 10, 2004, acknowledging that he had been formally counseled and that he agreed with the content of

the form provided. *See* AR 120. On the same day, Mr. Hwang attempted to bypass his chain-of-command and see the group commander claiming that someone had attempted to access his computer while he was hospitalized. AR 117. When asked, Mr. Hwang refused to show evidence of his allegations. *Id.* Based on this incident, SGT Scheuring again formally counseled Mr. Hwang, warning him that continued poor behavior could result in his separation from service. *Id.* Mr. Hwang also informed SGT Scheuring that he felt a slight side effect from the prescribed medication. *Id.* The mental health clinic subsequently permitted Mr. Hwang to suspend his medication for the weekend. *Id.* In addition to signing the February 10, 2004 counseling form, Mr. Hwang provided a written commentary apologizing for his behavior and suggesting that there may have been a misunderstanding. AR 118.

On February 9, 2004, Mr. Hwang returned to the mental health clinic where his medication was reduced to one-half of a pill nightly. AR 115. On February 10, 2004, SGT Scheuring formally counseled Mr. Hwang regarding his medication and further informed Mr. Hwang that either he or another soldier would administer Mr. Hwang's prescription to ensure that he was taking the proper dosage. *Id.* Mr. Hwang again signed and acknowledged receipt of the counseling form on February 10, 2004. *See* AR 116.

On February 11, 2004, Mr. Hwang's commander notified him of his intent to initiate separation proceedings pursuant to Army Regulation 635–200, paragraph 5–17, based upon Mr. Hwang's mental condition. AR 112. Army Regulation 635–200, entitled "Active Duty Enlisted Administration Separations," sets forth the procedures by which enlisted soldiers may be separated from the Army. *See* Def.'s Mot. to Dismiss, App. 7; *see also* AR 10. It provides, in relevant part, that adequate counseling and rehabilitative measures must be taken before initiating separation proceedings and "determining that a soldier has no potential for further useful service and therefore, should be separated." (Def.'s Mot. to Dismiss, App. 8.) Specifically, at least one formal counseling session is required and evidence must exist

to demonstrate that a soldier's deficiency continued after the initial formal counseling. AR 9. While a soldier must be given a "reasonable opportunity to overcome or correct" his or her deficiency, the number or amount of formal counseling sessions prior to initiating separation proceedings are discretionary. *Id.* Ultimately, a commander must consider factors such as the length of time since the prior counseling session, the soldier's performance and conduct during the intervening period, and the soldier's potential for "becoming a fully satisfactory soldier" prior to separating him or her from active duty. *Id.*

In the notification letter, Mr. Hwang's commander concluded that separation was appropriate because the examining psychiatrist determined that Mr. Hwang's delusional disorder would "cause significant defects in judgment, responsibility or reliability." AR 112. The commander recommended that Mr. Hwang receive honorable discharge. *Id.* The notification letter also informed Mr. Hwang that he had a right to consult with counsel regarding the matter. *Id.* On February 11, 2004, Mr. Hwang acknowledged receipt of the commander's notification, confirming that he had been advised of his rights to consult with counsel. AR 114.

On February 17, 2004, Mr. Hwang submitted a statement to his commander requesting a reasonable opportunity to overcome or correct his condition pursuant to Army Regulation 635–200. AR 109. Mr. Hwang similarly requested reevaluation of his mental status in the presence of a family member and another member of his unit. *Id.* Despite Mr. Hwang's request for reconsideration, Mr. Hwang's commander recommended to his superiors that he be separated from the Army. AR 106–07. The commander noted that Mr. Hwang "has been counseled, and through subsequent behavior, has demonstrated a lack of acceptance of rehabilitative measures." AR 106. The group commander concurred with the separation recommendation and directed that Mr. Hwang be honorably discharged without transfer to the Individual Ready Reserve ("IRR"). AR 104–05. The Army discharged Mr. Hwang on March 13, 2004. AR 172–74.

Mr. Hwang submitted his original complaint to the Court on April 17, 2009 and twice sought leave to amend his pleadings.[2] Mr. Hwang states that after complaining to his platoon officer that his roommate ground his teeth, which affected his ability to sleep, he unexpectedly was given a counseling form referring him for a medical evaluation. (July 22, 2009 Am. Compl. ¶¶ 9–11.) Mr. Hwang states that he wrongfully was hospitalized, inadequately evaluated, and improperly diagnosed with delusional disorder. *Id.* at ¶ 12. He further argues that the examining psychiatrist never informed him of his diagnosis, and that despite receiving three counseling forms following his hospitalization, he never refused to take his medication or otherwise engaged in improper behavior. *Id.* at ¶¶ 13–16. Mr. Hwang contends that the Army wrongfully and improperly discharged him from active service in violation of the United States Constitution, Army Regulations, and Department of Defense Instructions ("DODI") by (1) improperly referring him for a mental health evaluation; (2) failing to notify him of his rights before his mental health evaluation; and (3) depriving him of an opportunity to seek a second opinion. *Id.* at ¶¶ 20–41. Mr. Hwang also asserts that the Army discriminated against him on the basis of race and national origin. *Id.* ¶ 34.

On June 15, 2009, Defendant filed a motion for voluntary remand to the ABCMR pursuant to RCFC 52.2, to determine whether the Army followed proper procedures in separating Mr. Hwang from service, and to correct any errors in Mr. Hwang's discharge. (Def.'s Mot. Remand 1–2.) On July 24, 2009, the Court granted Defendant's motion and remanded Mr. Hwang's case to the ABCMR to determine whether the Army followed proper procedures in discharging Mr. Hwang from active service. On September 3, 2009, the Court clarified its remand order, confirming that the ABCMR had full discretion to resolve the matter in accordance with its regulatory procedures and that the Board was not required to submit Mr. Hwang's file directly to an MEB. The ABCMR rendered its decision on January 6, 2010, concluding that the Army followed proper procedures in

---

**2.** *See* Pl.'s June 26, 2009 Mot. to Amend Compl.; *see also* Pl.'s July 22, 2009 Mot. to Amend

separating Mr. Hwang based on his suffering from a "physical or mental condition that could potentially interfere with assignment to or performance of duty." AR 13. The ABCMR specifically noted that Mr. Hwang's chain of command followed all regulatory notification requirements and "afforded [Mr. Hwang] all rights to which he was entitled based on his separation processing. . . ." *Id.* While Mr. Hwang's examining psychiatrist did not provide evidence that referral to an MEB would be appropriate, the ABCMR nevertheless recommended that Mr. Hwang undergo such an evaluation. *See* AR 14. The ABCMR noted that should Mr. Hwang agree to an evaluation and the MEB find that his delusional disorder rendered him "unfitting for military service," Mr. Hwang could complete processing through the Physical Disability Evaluation System and be separated or retired by reasons of physical disability. *Id.* However, if the MEB finds that Mr. Hwang's delusional disorder diagnosis was appropriate, or if Mr. Hwang refuses to undergo a medical evaluation, the Board determined that it would be appropriate to accept the original findings of Mr. Hwang's examining psychiatrist. AR 14–15.

The ABCMR's decision was supplemented with an analysis by a medical examiner conducted on October 26, 2009. *See* AR 16–20. After reviewing Mr. Hwang's medical and administrative records, among other documents, the medical examiner concluded that Mr. Hwang's platoon officer properly referred him for a mental health evaluation and that the examining psychiatrist appropriately diagnosed him with delusional disorder. AR 17, 19. The medical examiner further determined that, while not entirely necessary, Mr. Hwang nonetheless should be referred to an MEB to "reassess the validity of [the] reason for discharge." AR 19–20.

Mr. Hwang has filed a number of motions and other pleadings following the ABCMR's January 6, 2010 decision. For example, on February 17, 2010, Mr. Hwang filed his first motion for summary judgment asserting that the ABCMR incorrectly determined that he was properly separated from active service.

(Pl.'s Feb. 17, 2010 Mot. for Sum. J. 3, 7–10.) Mr. Hwang subsequently filed by leave of the Court an amended motion for summary judgment on March 16, 2010, and a memorandum in support of his amended summary judgment motion on May 5, 2010, maintaining that the ABCMR erred in finding that his command properly referred him for a mental health evaluation and properly processed him for separation. *See* Pl.'s Mar. 16, 2010 Am. Mot. for Sum. J. 4–8; Pl.'s May 5, 2010 Mem. 8.

On May 14, 2010, Defendant filed a motion to dismiss Mr. Hwang's complaint pursuant to RCFC 12(b)(6), or in the alternative, motion for judgment on the administrative record. The Government asserts that Mr. Hwang failed to ask the ABCMR to return him to active duty service and therefore he is precluded from raising that request in this Court. (Def.'s Mot. to Dismiss 7–9.) Defendant similarly contends that this Court cannot grant him reinstatement because the expiration of his term of enlistment has passed. *Id.* at 10–11. Defendant also alleges that the ABCMR's decision that Mr. Hwang properly was separated from active duty was not arbitrary, capricious, or contrary to law. *Id.* at 13–20. Mr. Hwang filed his opposition to Defendant's motion on June 4, 2010. On June 18, 2010, Mr. Hwang filed what appears to be another response in opposition to the Government's motion to dismiss arguing that the ABCMR's decision was unlawful.

Mr. Hwang has continued to file other separate and unrelated motions in this case, too numerous to describe in this opinion.[3] Among other pleadings, on June 4, 2010, Mr. Hwang filed a motion to recuse Judge Wheeler from this case contending that the Court abused its discretion by ordering that his case be remanded to the ABCMR. He has since sought leave of Court to amend that motion on at least two occasions. Mr. Hwang also filed on May 26, 2010 a separate motion requesting the Court to remand proceedings to the ABCMR in order to clarify several "medical terms" used in the ABCMR's January 6, 2010 decision. Additionally, on June 17, 2010, Mr. Hwang filed a

---

3. *See, e.g.,* Pl.'s Feb. 17, 2010 Mot. to Strike or Amend Words; Pl.'s Mar. 16, 2010 Mot. to Amend Compl; Pl.'s May 3, 2010 Mot. to Amend. Compl.

motion to stay proceedings related to Defendant's motion to dismiss. In light of this opinion granting Defendant's motion to dismiss and motion for judgment on the administrative record, the Court need not address the other outstanding motions. These motions will be dismissed as moot.

## Standards of Review

A. *Motion to Dismiss For Failure to State a Claim Upon Which Relief May be Granted*

■■ When considering a motion to dismiss pursuant to RCFC 12(b)(6), the Court must "accept as true all of the allegations in the complaint, ... and [the Court] must indulge all reasonable inferences in favor of the non-movant...." *Laudes Corp. v. United States*, 86 Fed.Cl. 152, 160 (2009) (citing *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed.Cir.2001)). The complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing of entitlement to relief. *Cary v. United States*, 552 F.3d 1373, 1376 (Fed.Cir.2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). *Pro se* plaintiffs, however, are entitled to a liberal construction of their pleadings and are not expected to frame issues with the precision of a pleading drafted by a lawyer. *Grayton v. United States*, 92 Fed.Cl. 327, 331 (2010) (citing *Roche v. United States Postal Serv.*, 828 F.2d 1555, 1558 (Fed.Cir.1987)); *see also Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers").

■■ To state a claim, the factual allegations must be "enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp.*, 550 U.S. at 555, 127 S.Ct. 1955. While the plaintiff need not set out in detail the facts upon which the claims are based, the asserted facts must be sufficient to state "a claim to relief that is plausible on its face." *Cary*, 552 F.3d at 1376. Therefore, a complaint will only be dismissed pursuant to RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Laudes Corp.*, 86 Fed.Cl. at 160 (citing *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed.Cir. 2002)).

B. *Motion For Judgment on The Administrative Record*[4]

■■■ As the Federal Circuit explained in *Bannum, Inc. v. United States*, the standard applicable to a motion for judgment on the administrative record differs from a motion for summary judgment. 404 F.3d 1346, 1355–57 (Fed.Cir.2005). Under RCFC 52. 1, the Court reviews a motion for judgment on the administrative record to determine whether "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *DMS All–Star Joint Venture v. United States*, 90 Fed.Cl. 653, 661 (2010) (citing *Bannum, Inc.*, 404 F.3d at 1355–56). Resolving a motion for judgment under RCFC 52.1 is "akin to an expedited trial on 'the paper record.'" *CHE Consulting, Inc. v. United States*, 78 Fed.Cl. 380, 387 (2007) (quoting *A & D Fire Prot., Inc. v. United States*, 72 Fed.Cl. 126, 131 (2006)). Thus, the Court may make findings of fact where necessary. *Bannum, Inc.*, 404 F.3d at 1356.

■■ Judicial review of a military board decision is limited to the administrative record already in existence. *Boyer v. United States*, 81 Fed.Cl. 188, 191 (2008). The Court will not disturb a military board decision unless it finds that it is "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Roth v. United States*, 378 F.3d 1371, 1381 (Fed.Cir.2004). A correction board's decision is considered arbitrary and capricious "if the board fails to consider an important aspect of a problem, offers an explanation for its decision that

---

4. The Court notes that Mr. Hwang's motion for summary judgment was a procedurally improper means of addressing the merits of his claims. *See* RCFC 52.1 Rules Committee Note (2006 Adoption) ("Summary judgment standards are not pertinent to judicial review upon an adminis-

trative record."). It appears that in drafting his summary judgment motion, Mr. Hwang relied on the administrative record including the ABCMR's findings. Accordingly, his summary judgment motion should be treated as a motion for judgment on the administrative record.

runs counter to the evidence before the board, or 'is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Van Cleave v. United States*, 70 Fed.Cl. 674, 679 (2006) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). When a corrections board fails to redress "clear injustice," its decision is arbitrary and capricious and must be overturned on review. *Boyer*, 81 Fed.Cl. at 194.

 This Court, however, does not sit as a "super correction board." *Chapman v. United States*, 92 Fed.Cl. 570, 577 (2010) (quoting *Skinner v. United States*, 219 Ct.Cl. 322, 594 F.2d 824, 830 (1979)). On the contrary, a military correction board is entitled to deference. *Flowers v. United States*, 80 Fed.Cl. 201, 212 (2008) (noting that a decision rendered by a board for correction of military records before this Court is subject to a narrow standard of review). Ultimately, the plaintiff bears a heavy burden of demonstrating by "'cogent and clearly convincing evidence'" that the military board's action lacked a rational basis. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed.Cir.1986) (quoting *Dorl v. United States*, 200 Ct.Cl. 626, 633 (1973)); *see also Flowers*, 80 Fed.Cl. at 212. Where "reasonable minds could reach differing conclusions on the same evidence," this Court may not substitute its judgment for that of the board. *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983).

## Discussion

### A. Subject Matter Jurisdiction

 Subject matter jurisdiction is a "threshold matter that must be considered before proceeding to evaluate the merits of a case." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006). Under the Tucker Act, this Court has jurisdiction over certain actions for monetary relief against the United States. *See* 28 U.S.C. § 1491(a)(1). Such actions include "contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating constitutional provisions, statutes, regulations, or executive orders." *Martinez v. United*

*States*, 333 F.3d 1295, 1302–03 (Fed.Cir. 2003). Although the Tucker Act waives the sovereign immunity of the United States for claims for money damages, it does not by itself create substantive rights. *Id.* at 1303; *see also United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) ("[E]ntitlement to money damages depends upon whether any federal statute can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.") (citing *Eastport S S. Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002 (1967)). A plaintiff asserting jurisdiction in this Court must identify a constitutional provision, a statute, or a regulation that provides a substantive right against the United States for monetary damages. *Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir.1997); *see also Osborn v. United States*, 47 Fed.Cl. 224, 228–29 (2000); *Hamlet v. United States*, 63 F.3d 1097, 1101 (Fed.Cir.1995).

### 1. Mr. Hwang's Allegations of Discrimination Based Upon Race And National Origin

 While Mr. Hwang alleges that the Army discriminated against him on the basis of his race and national origin, (July 22, 2009 Am. Compl. ¶ 34), he fails to cite a particular statute or provision to support such allegations. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (2000), prohibits the Government from engaging in discrimination, but it does not apply to military personnel. *See Gonzalez v. Dep't of the Army*, 718 F.2d 926, 928–29 (9th Cir.1983); *Flowers*, 80 Fed.Cl. at 214. Moreover, such discrimination claims are within the exclusive jurisdiction of the United States district courts, and this Court lacks jurisdiction to entertain such actions brought under Title VII. *Dixon v. United States*, 17 Cl.Ct. 73, 77 (1989). Therefore, Mr. Hwang's allegations of race discrimination are DISMISSED for want of jurisdiction.

### 2. Mr. Hwang's First, Fifth, And Fourteenth Amendment Due Process Allegations

 Mr. Hwang also asserts that the Army, in separating him from active duty,

violated his Constitutional rights under the First, Fifth, and Fourteenth Amendments. *See* July 22, 2009 Am. Compl. ¶¶ 1, 23, 29, 35. It is well established that this Court lacks jurisdiction over due process claims asserted under the First, Fifth, and Fourteenth Amendments because they do not mandate payment by the Government. *See, e.g., Crocker v. United States*, 125 F.3d 1475, 1476 (Fed.Cir.1997) (no jurisdiction over Fifth Amendment Due Process claims) (citations omitted); *Le Blanc v. United States*, 50 F.3d 1025, 1028 (Fed.Cir.1995) (no jurisdiction over First or Fourteenth Amendment claims) (citations omitted); *Stephanatos v. United States*, 81 Fed.Cl. 440, 445 (2008) (no jurisdiction over Fourteenth Amendment, or Fifth Amendment Due Process Clause claims). Therefore, the Court must DISMISS Mr. Hwang's constitutional claims for lack of subject matter jurisdiction.

### 3. *Mr. Hwang's Military Pay Claims*

 Mr. Hwang has identified Section 204 of Title 37 of the United States Code, among other sections, as the money-mandating statute conferring jurisdiction to this Court. (July 22, 2009 Am. Compl. 1.) Section 204 of the Military Pay Act authorizes basic pay for members on active duty in the Armed Forces. *See Martinez*, 333 F.3d at 1303; 37 U.S.C. § 204(a). It is well established that this Court has jurisdiction over military back pay claims and claims for reinstatement during a period of unlawful separation from the armed forces. *Spehr v. United States*, 51 Fed.Cl. 69, 81 (2001) ("[C]laims for back pay stemming from allegedly unlawful separation from active duty in the armed services are within the jurisdiction of the Court of Federal Claims...."); *Dougharty v. United States*, 27 Fed.Cl. 436, 439 (1993) ("[T]he Court of Federal Claims has jurisdiction over claims for reinstatement in the Army and for back pay for the period of a claimant's unlawful separation."). In order to bring a military discharge case, a plaintiff must allege that, because of the unlawful discharge, he is entitled to back pay that he "would have received but for the unlawful discharge." *Martinez*, 333 F.3d at 1303; *see also Tippett v. United States*, 185 F.3d 1250, 1255 (Fed.Cir.1999) *abrogated in part on other grounds by Fisher v. United States*, 402 F.3d 1167 (Fed.Cir.2005).

 Similarly, this Court has the authority to provide equitable relief "incidental of and collateral to its award of a money judgment." *Martinez v. United States*, 77 Fed.Cl. 318, 322 (2007) (quoting *Voge v. United States*, 844 F.2d 776, 781 (Fed.Cir. 1988)). Thus, in Military Pay Act cases, the Court has the power to correct military records if the allegation is incidental to a claim of monetary damages. *Id.* In this case, Mr. Hwang seeks back pay and reinstatement to active duty in the Army based on alleged violations of Army regulations, and also requests his medical diagnosis to be expunged from his military records. (July 22, 2009 Am. Compl. 1, 7.) Based on these allegations, the Court has jurisdiction over Mr. Hwang's military back pay, reinstatement, and equitable claims.

### B. *Mr. Hwang Has Failed to State a Claim Upon Which This Court May Grant Relief.*

The Government offers two reasons why Mr. Hwang's request for reinstatement to active duty cannot survive a Rule 12(b)(6) motion to dismiss. *See* Def.'s Mot. to Dismiss 7–11. Defendant first contends that Mr. Hwang's application to the ABCMR failed to request the Board to return him to active duty. *Id.* at 8 (citing AR 21–100). Defendant also contends that this Court lacks the ability to grant Mr. Hwang reinstatement into the Army because his term of enlistment has expired. *Id.* at 10. While the Court finds no merit to the Government's first assertion, the Court concludes that because Mr. Hwang's expiration of term of service ("ETS") expired in 2005, it lacks the ability to grant him the relief requested.

### 1. *Mr. Hwang Clearly And Repetitively Requested Reinstatement to Active Duty to The ABCMR And to This Court.*

 The Government suggests that because Mr. Hwang failed to raise before the ABCMR his request for reinstatement, he is precluded from raising the same request in

this Court. *Id.* at 7–8. The Court finds no merit to the Government's assertion. On the contrary, the Court's review of the administrative record finds that Mr. Hwang, on several occasions, made clear his interest in being reinstated to active duty in the Army. For example, in Mr. Hwang's statement to the ABCMR submitted in conjunction with the Court's July 24, 2009 remand order, he informed the Board that he has filed a complaint for back pay and "reinstatement one month before [his] ETS." AR 28. In the same statement, Mr. Hwang argued that "the initiation of the separation was unjust, improper, and illegal" and that he was "illegally discharged." *See, e.g.,* AR 30. Similarly, on August 10, 2009, Mr. Hwang sent an e-mail to the Army Review Boards Agency concerning this Court's remand order. AR 21–22. In the e-mail, Mr. Hwang wrote that he improperly was released from the Army and requested an evaluation before an MEB to be "properly released" or otherwise "continue to serve in the Active Service. . . ." AR 22.

Mr. Hwang also explicitly objected to Defendant's June 15, 2009 motion to remand to the ABCMR out of concern that it would affect adversely his ability to be reinstated into the Army based on age restrictions. (Pl.'s Resp. Def.'s Mot. to Remand 2.) The Court addressed Mr. Hwang's concerns in its July 24, 2009 remand order when it stated that "Mr. Hwang claims that any delay would impact his ability to seek reinstatement in the Army." July 24, 2009 Order 2. A copy of this Order was provided to the ABCMR in rendering its decision. *See* AR 3.

What is more, based on this Court's review of the ABCMR's decision, it appears the Board clearly was aware that Mr. Hwang sought reinstatement as a part of his requested relief. *See, e.g.,* AR 3; AR 16 ("The applicant requests reinstatement, with back pay and allowances, or a change in his records to reflect that he served until his ETS date, with back pay and allowances."). Accordingly, this Court cannot agree that Mr. Hwang waived his claim for reinstatement and therefore will not dismiss his claim on that basis.

### 2. The Court Lacks The Ability to Grant Mr. Hwang Reinstatement.

Despite Mr. Hwang's efforts to be reinstated to active duty in the Army, this Court lacks the authority to grant him the requested relief. As the Court of Appeals for the Federal Circuit and this Court consistently have held, "no serviceperson has a right to enlist or to reenlist in the armed forces 'unless specially granted one.' " *Flowers,* 80 Fed.Cl. at 216 (quoting *Dodson v. Dep't of the Army,* 988 F.2d 1199, 1208 (Fed. Cir.1993)). Thus, while a serviceman who has been improperly discharged may recover pay and allowances, he may only do so "to the date on which his term of enlistment would otherwise have expired." *Thomas,* 42 Fed.Cl. at 453 (citing *Maier v. Orr,* 754 F.2d 973, 980 (Fed.Cir.1985)). Once the term of enlistment has expired, this Court lacks the authority to order reinstatement. *Id.* at 452; *see also McEniry v. United States,* 7 Cl.Ct. 622, 626 (1985) ("[A]n enlisted man has no right to reenlist when his previous enlistment period ends. . . ."). In this case, Mr. Hwang entered active duty on September 12, 2002 for a three-year term of enlistment. AR 135–36. Thus, his expiration of term of service was September 11, 2005. *Id.* Accordingly, this Court's ability to reinstate Mr. Hwang to active duty has long since passed and therefore his request to be reinstated must be DENIED for failure to state a claim upon which relief may be granted.

### C. The ABCMR's Decision Was Not Arbitrary or Capricious And is Supported by The Law.

The ABCMR reviewed Mr. Hwang's case *de novo* taking into account Mr. Hwang's application for correction of military records, his military personnel records, and an October 26, 2009 advisory opinion by a medical examiner. AR 3–5; 16–20. After reviewing Mr. Hwang's case, the ABCMR determined that Mr. Hwang (1) was properly referred for a mental status evaluation by his commander; (2) was examined by a qualified psychiatrist; (3) given "ample opportunity" to overcome his medical deficiency; and (4) was separated in accordance with "regulatory notification requirements . . . based on the

diagnosis and recommendation of competent medical authority." AR 13. Each of these findings is supported by the evidence in the administrative record.

### 1. Mr. Hwang's Referral For a Medical Evaluation

██ Despite Mr. Hwang's assertions, his commanding officer properly referred him for a medical evaluation. Mr. Hwang's referral stemmed from his revelation to his platoon sergeant, SGT Scheuring, that he had been harassed by an organization called the "Inflictors" for the past ten years. AR 121–22. Mr. Hwang further informed SGT Scheuring that the "Inflictors" may be contacting his roommate causing him to bother Mr. Hwang by grinding his teeth at night. Id. Mr. Hwang also suggested that his commanding officer may be a member of the "Inflictors." Id. SGT Scheuring documented this conversation on a formal counseling form, which Mr. Hwang signed. See AR 121. In light of Mr. Hwang's statements, SGT Scheuring referred Mr. Hwang to an inpatient psychiatric care service "to ensure [Mr. Hwang's] safety as well as the rest of the Unit." Id.

In his review of Mr. Hwang's medical personnel records in 2009, the medical examiner concurred that "[u]nder the circumstances, a mental health evaluation was certainly appropriate to, if for no other reason, determine if the Soldier was a danger to himself or others." AR 17. The ABCMR took both Mr. Hwang's military personnel records and the medical examiner's evaluation into account in reasonably concluding that Mr. Hwang was "properly referred for a mental status evaluation by his commander." AR 13. Accordingly, the Court finds no reason to overturn the ABCMR's decision on this basis.

### 2. Mr. Hwang's Medical Diagnosis

██ The ABCMR also did not err in finding that Mr. Hwang properly was diagnosed with delusional disorder by a "qualified psychiatrist." According to Army Regulation 635–200, which governs separations of enlisted personnel, a "command-directed mental health evaluation performed in connection with separation under paragraph 5–

17 will be performed by a psychiatrist...." (Army Reg. 635–200, Section VI ¶ 1–32(f), Def.'s Mot. to Dismiss, App. 10.) Dr. Cha J. Yu, Chief of Inpatient Psychiatry Service, certainly meets that criteria. See AR 123.

██ Nor can the Court find any basis to support Mr. Hwang's assertion that he was improperly diagnosed with delusional disorder. Delusional disorder is defined as a psychotic mental disorder and is characterized by, among other things, at least one month of "nonbizarre delusions." AR 12, 17; see also Diagnostic and Statistical Manual of Mental Disorders 298 (4th ed.2000). Mr. Hwang suggests that he fails to meet the longevity requirement for delusional disorder because he was hospitalized only for three days. (Pl.'s May 5, 2010 Mem. 3–7.) This Court cannot substitute its judgment for that of an examining physician, medical evaluation board, physical evaluation board, or the Army Board for the Correction of Military Records. See Joslyn v. United States, 90 Fed.Cl. 161, 176 (2009). Rather, the Court's review of decisions rendered by a military board is limited to determining whether the decision was arbitrary, capricious, or otherwise contrary to law. Heisig, 719 F.2d at 1156. In this case, the examining psychiatrist conducted a comprehensive evaluation of Mr. Hwang prior to diagnosing him with delusional disorder. AR 13. The examining psychiatrist determined that Mr. Hwang appeared to have suffered from delusional disorder since 1995—well beyond the one-month time frame required for a delusional disorder diagnosis. AR 124; see also AR 18. The Army's medical examiner also determined that Dr. Yu's medical diagnosis is supported by a review of Mr. Hwang's medical record. AR 19. The Court therefore will not overturn the ABCMR's determination regarding Mr. Hwang's diagnosis as irrational or unsupported.

### 3. Mr. Hwang Was Granted Sufficient Time to Address His Disorder.

██ The Court finds reasonable the ABCMR's determination that Mr. Hwang's command gave him "ample opportunity" to overcome his deficiencies prior to separation. AR 13. Mr. Hwang's contention that his

command improperly initiated separation proceedings three days after his hospital release is unavailing. (Pl.'s Resp. to Def.'s Mot. to Dismiss 6.) As the ABCMR explained in its decision, Army Regulation 635–200 requires commanders to undertake "adequate counseling and rehabilitative measures ... before initiating separation proceedings." AR 10; *see also* Army Reg. 635–200, Section II ¶ 1–16(a), Def.'s Mot. to Dismiss, App. 8. Under these regulations, a commander is required to formally notify a soldier of his deficiencies in the event the soldier's conduct becomes unacceptable. (Army Reg. 635–200, Section II ¶ 1–16(b), Def.'s Mot. to Dismiss, App. 9.) Although the number and frequency of the formal counseling sessions are discretionary, at least one formal counseling session is required before separation proceedings may be initiated. *Id.* The ABCMR reasonably found that, based upon the regulations, Mr. Hwang was given sufficient time to address his deficiencies. AR 13. As the ABCMR noted, Mr. Hwang was formally counseled on at least two occasions and the latter counseling form noted that Mr. Hwang apparently was still delusional and otherwise "not compliant with medical requirements." *Id.* While Mr. Hwang argues that he was not given enough time to overcome his disorder, the evidence in the administrative record is to the contrary. *See* AR 13, 117–122. Indeed, Mr. Hwang himself admits to having suffered from illusions of "Inflictors" harassing him for at least ten years. AR 121–24. Accordingly, the Court finds the ABCMR's determination in this regard reasonable, and in accordance with the law.

4. *The Army Complied With Appropriate Regulations in Separating Mr. Hwang From Active Duty.*

 The Court also finds no basis to overturn the ABCMR's determination that Mr. Hwang's chain of command complied with all regulatory notification requirements in removing him from active duty. AR 13.

After Mr. Hwang's three-day hospitalization, the examining psychiatrist determined that Mr. Hwang's delusional disorder "would cause significant defects in his judgment, responsibility or reliability" and would "likely create additional management problems for the commander." AR 123. The examining psychiatrist therefore recommended Mr. Hwang's administrative discharge pursuant to Army Regulation 635–200 paragraph 5–17 for separation based on a physical or mental condition. *Id.* As previously discussed, Mr. Hwang's commanding officer complied with Army Regulation 635–200, paragraph 1–16 by formally counseling Mr. Hwang on his medical condition on four separate occasions. AR 117–22. Mr. Hwang signed each formal counseling form.[5] *Id.* Mr. Hwang's commanding officer further complied with Army Regulation 635–200, paragraph 2–2 by notifying Mr. Hwang on February 11, 2004 that his separation from the Army has been recommended. AR 112–13. In this notification letter, Mr. Hwang's commanding officer stated that his decision to separate Mr. Hwang was based both on Mr. Hwang's diagnosis with delusional disorder and his formal counseling with the platoon sergeant. AR 13, 112. Contrary to Mr. Hwang's assertions, the February 11, 2004 notification letter informed Mr. Hwang that he had the right to (1) consult with counsel; (2) submit a written statement; and (3) obtain copies of documents that will be sent to the separation authority to support the proposed separation. AR 112. Mr. Hwang exercised each of these rights in contesting his separation.[6] *See* AR 81, 109–11; *see also* Pl.'s April 17, 2009 Compl., App. Accordingly, the ABCMR's determination that Mr. Hwang properly was separated and notified in accordance with Army Regulations was neither irrational nor unlawful, and shall be upheld.

D. *The Army's Violation of DODI Was Harmless.*

In addition to contesting the propriety of his separation proceedings, Mr. Hwang ar-

---

5. While Mr. Hwang marked that he did not agree with the counseling form dated February 10, 2004, he nonetheless apologized for his behavior and stated that he "will follow the instructions." AR 118.

6. The notification letter further entitled Mr. Hwang to a hearing before an administrative separation board *"if [he had] 6 or more years of active and reserve military service."* AR 112 (emphasis added). Because Mr. Hwang was enrolled in the Army for only three years, this administrative hearing was inapplicable.

gues that the Army violated the notification requirements specified in DODI 6490.4 when it referred him for a mental health evaluation. (Pl.'s Resp. to Def.'s Mot. to Dismiss, 4–6.) DODI is a Department of Defense instruction which implements the Military Mental Health Evaluation Protection Act ("Act"), Pub.L. No. 102–484, § 546, 106 Stat. 2315, 2416–12 (1992), requiring commanders and mental health providers "to comply with several procedural requirements before subjecting a service member to a mental health evaluation, treatment or hospitalization." Maj. Daniel A. Lauretano, *The Military Whistleblower Protection Act & the Military Mental Health Evaluation Protection Act,* 1998–Oct. Army Law 1, 1 (1998). The purpose of the Act is to protect military personnel from unwarranted mental health evaluations or involuntary hospitalization. *Id.* at 12–13 (citing National Defense Authorization Act of 1991, Pub.L. No. 101–510, § 554(d), 104 Stat. 1485, 1568 (1998)). The Act thus puts in place certain procedural protections as safeguards for members of the military and as guidelines for commanders and mental health evaluators to follow. *Id.* at 12.

DODI 6490.4 provides that prior to referring a soldier to a mental health provider, the soldier's commanding officer must give the soldier written notice of the referral at least two days prior to the evaluation. *See* DODI 6490.4, paragraph 6.1.1.4, Def.'s Mot. to Dismiss, App. 15. The written notice must include: (1) a description of the behavior which led to the commanding officer's decision to refer the soldier for a mental health evaluation; (2) the name of the mental healthcare provider with whom the commanding officer consulted prior to making the referral; (3) a "Notification of the Service Member's Statement of Rights;" (4) the date, time, and place where the mental health evaluation is scheduled; (5) titles and contact information for "other authorities, including attorneys, Inspector Generals, and chaplains, who can assist the [s]ervice member who wishes to question the necessity of the referral;" and (6) the name and signature of the commanding officer. *Id.*

DODI 6490.4 also supplies a sample of the "Notification of the Service Member's State-ment of Rights" that commanding officers are obligated to provide to soldiers. Among other things, the Statement of Rights states that a soldier who is referred for a mental health evaluation is entitled to (1) speak with an attorney; (2) submit an allegation to the Inspector General that the referral was reprise for whistle-blowing; and (3) obtain a second opinion and be evaluated by a mental healthcare provider of the soldier's own choosing and at his own expense. *Id.* at 40. In the event a soldier wishes to obtain a second opinion, the Statement of Rights emphasizes that the second medical opinion "shall not delay or substitute for an evaluation performed by a DoD mental healthcare provider." *Id.*

■ Mr. Hwang contends that the Army failed to notify him of his rights under DODI 6490.4. Specifically, Mr. Hwang argues that his commanding officer neither informed him of his right to communicate with the Inspector General, nor afforded him a right to seek a second medical opinion. (Pl.'s Resp. to Def.'s Mot. to Dismiss 4–6, 8–9.) Based on the Court's review of the administrative record, there is no evidence to demonstrate that either Mr. Hwang's commanding officer or examining psychiatrist complied with DODI 6490.4. The administrative record further lacks any evidence that Mr. Hwang was provided written notice of the mental health referral two days prior to his hospitalization. Although Mr. Hwang did receive formal counseling from his platoon sergeant on January 26, 2004 referring him to inpatient psychiatric treatment, the form lacks all of the necessary information required under the DODI. *See* AR 121–22. Most relevant to Mr. Hwang's claim, nothing in the administrative record shows that he was provided with a Notification of the Service Members Statement of Rights.

■ The Court finds that in referring Mr. Hwang for inpatient psychiatric care, the Army failed to comply with the requirements of DODI 6490.4. Nevertheless, the Court finds that this error was harmless and does not provide Mr. Hwang with a basis for relief. AR 177. The Statement of Rights specifically provides that the right to contact the Inspector General exists when a soldier

is alleging that the mental health evaluation referral was "a *reprisal* for making or attempting to make a lawful communication to a Member of Congress, any appropriate authority in your chain of command, an IG, or a member of a DoD audit ... or law enforcement organization. ...." (Def.'s Mot. to Dismiss, App. 40 (emphasis added).) In this case, there is no evidence in the record to suggest that Mr. Hwang was referred to a mental health provider as a reprisal for complaining about his roommate's teeth grinding. On the contrary, the record demonstrates that Mr. Hwang's commanding officer deemed the referral necessary following Mr. Hwang's confession that he had been harassed for ten years by a group called the "Inflictors" and that his roommate or supervisors were a part of that group. The Court finds that it was both reasonable and appropriate for the commanding officer to order a mental health evaluation, if for no other reason than to ensure the safety of Mr. Hwang and others. *See also* AR 17, 177. The Court acknowledges Mr. Hwang's argument that he did not engage in any violent behavior toward himself or others while in the Army. (Pl.'s Resp. to Def.'s Mot. to Dismiss 6.) Such an argument, however, is insufficient to prove that Mr. Hwang's medical referral was an act of reprisal.

Similarly, the Army's error in failing to notify Mr. Hwang of his right to obtain a second opinion had no effect on his subsequent separation from the Army. As previously discussed, the Statement of Rights explicitly provides that an evaluation by an independent mental healthcare provider "shall not delay nor substitute for an evaluation performed by a DoD mental healthcare provider." (Def.'s Mot. to Dismiss, App. 40.) Even if Mr. Hwang were to have sought a second medical opinion [7], the Army still was entitled to separate him from active duty in accordance with Army Regulation 635–200. In other words, Mr. Hwang's right to a second medical opinion did not preclude the Army from initiating separation proceedings. Therefore, despite the Army's failure to comply with the DODI, the Court finds such errors to have been harmless and otherwise did not preclude the Army from separating Mr. Hwang from service.

[redacted] On December 15, 2009, the ABCMR's legal advisor issued an opinion on behalf of the Board also finding that the Army's failure to comply with DODI 6490.4 was harmless.[8] *See* AR 175–79. Although the legal advisor recommended that the Board address this issue in more detail in its Record of Proceedings, the ABCMR's January 5, 2010 decision does not discuss Mr. Hwang's allegations that the Army violated the DOD instruction. *See* AR 3–14. Indeed, the ABCMR's decision makes no mention of the DODI 6490.4 or Mr. Hwang's allegations that he was neither granted an opportunity to seek a second opinion nor an opportunity to communicate with the Inspector General. *See id.* The Court's role in reviewing the ABCMR's decision is to determine whether it was arbitrary, capricious, or unsupported by substantial evidence. *See Roth,* 378 F.3d at 1381. In other words, the Board's decision will only be overturned as arbitrary, capricious, or contrary to the law when it fails to address a "clear injustice." *Boyer,* 81 Fed. Cl. at 194. In this case, while the ABMCR omitted any discussion of the DOD instruction in its final opinion, that omission does not render its determination of Mr. Hwang's claims unreasonable or in violation of the law. As discussed above, the ABCMR reasonably determined that Mr. Hwang's separation was

7. Mr. Hwang states in his pleadings that he requested a second medical opinion. *See, e.g.,* June 26, 2009 Am. Compl. 3; July 22, 2009 Am. Compl. 3. However, it does not appear from the evidence in the administrative record that he exercised that option.

8. Although Mr. Hwang discussed in his pleadings the ABCMR's legal advisor's opinion, this document was omitted from the administrative record. In response to the Court's July 30, 2010 Order requesting supplementation, Defendant explained that the legal advisor's opinion generally is considered to be protected attorney work-product. However, because it was produced inadvertently to Mr. Hwang, the Army did not object to supplementing the record with the opinion. The Court finds that because this document has been produced, the Army's attorney work-product privilege is waived. *See Eden Isle Marina, Inc. v. United States,* 89 Fed.Cl. 480, 504 (2009). Accordingly, the Court reviews the legal advisor's opinion as part of the administrative record. Compl.

proper and in accordance with Army Regulations. The ABCMR's failure to address DODI 6490.4 does not alter the soundness of its decision and the Court will not overturn the Board's decision on that basis.

E. *Back Pay is Not Appropriate Where Plaintiff Failed to Demonstrate That He Was Improperly Released From Active Duty.*

 The Military Pay Act affords a service member who improperly or involuntarily was released from active duty a right to back pay and allowances. *Flowers,* 80 Fed.Cl. at 216. Because the Court finds reasonable and lawful the ABCMR's decision that Mr. Hwang was properly separated from active duty, an award of back pay is unwarranted.

Although back pay in this case is not appropriate, Mr. Hwang is not left without any relief. On the contrary, the ABCMR recommended Mr. Hwang undergo an evaluation by an MEB in order to reassess the validity of his discharge. AR 14. Should the MEB determine that his diagnosis was unfitting, Mr. Hwang could be separated by reason of physical disability pursuant to Army Regulation 635–40. *Id.* In making its recommendation, the ABCMR noted that the examining psychiatrist underwent a "comprehensive examination" of Mr. Hwang during his three-day hospitalization. AR 13. Based on his analysis, the psychiatrist concluded that Mr. Hwang's diagnosis did not rise to the level "gross impairment of reality testing" which would support a separation processing through an MEB. AR 14; 123–24. The psychiatrist thus recommended that Mr. Hwang be discharged under the provisions of paragraph 5–17 of Army Regulation 635–200 which provides for "separations ... approved on the basis of physical or mental conditions not requiring a medical examination." (Def.'s Mot. to Dismiss, App. 13; AR 11, 14.) The ABCMR disagreed with the psychiatrist's recommendation because "regulatory guidelines for disorders with psychotic features, including delusional disorder ... supports a referral to an MEB." AR 14. Accordingly, the ABCMR determined it appropriate for Mr. Hwang to undergo an evaluation. *Id.* The Court finds the ABCMR's

recommendation reasonable. Indeed, by undergoing a medical evaluation, the Board is offering Mr. Hwang an opportunity to overcome the Army's findings and perhaps, receive the relief, *i.e.* disability benefits and expunging medical records, Mr. Hwang claims he is due.

Moreover, an evaluation by an MEB is precisely the relief Mr. Hwang repeatedly has requested in his pleadings before this Court. *See, e.g.,* Pl.'s May 5, 2010 Mem. 5 ("Had I been referred to an MEB, the MEB would have been an opportunity for me to clear myself with the diagnosis."); *Id.* at 5–6 ("The attending psychiatrist misapplied regulation by failure to refer me to an MEB."); Pl.'s Resp. to Def.'s Mot. to Dismiss 15 ("[T]he Army violated its regulation by failure to refer me to an MEB prior to the separation."). However, in his amended motion for summary judgment, Mr. Hwang asserts the ABCMR's recommendation is inappropriate because an MEB could not properly determine that his mental health status six years ago was impaired or that he was unfit for duty. (Pl.'s Am. Mot. for Sum. J. ¶ 17.) Instead, Mr. Hwang claims that military back pay is a more appropriate remedy. *Id.*

The Court acknowledges that should Mr. Hwang undergo a medical evaluation, the MEB may determine that he did not meet the retention standards at the time of separation, and therefore may not be discharged for a physical disability. AR 14, 20; *see also* Pl.'s Mar. 16, 2010 Am. Mot. for Sum. J. ¶ 17. However, the risk that the MEB may concur with the attending psychiatrist's diagnosis does not justify an award of back pay as an alternative means of relief. The administrative record demonstrates that Mr. Hwang was properly released from military service, and therefore this Court cannot award back pay or any other equitable relief. The ABCMR's offer to provide Mr. Hwang a medical evaluation is all that he is entitled to receive and no further relief will be granted.

*Conclusion*

Based upon the forgoing, Defendant's motion to dismiss pursuant to RCFC 12(b)(6) and motion for judgment on the administrative record pursuant to RCFC 52.1 are

GRANTED. Mr. Hwang's motion for summary judgment, which the Court has treated as a motion for judgment on the administrative record, is DENIED. Mr. Hwang's motion to recuse Judge Wheeler and various other motions are DISMISSED as moot. The Clerk is directed to DISMISS Plaintiff's allegations that he is entitled to reinstatement in the Army without prejudice. The remainder of Plaintiff's complaint shall be DISMISSED with prejudice.

IT IS SO ORDERED.